No. 7407.

## LEWIS ET AL. *v.* HARRISON ET AL.

PARTNERSHIP.—*Chattel Mortgage.—Lien.—Principal and Surety.*—Where, by the contract of copartnership, it is stipulated that one partner shall hold a lien upon the property of the firm, as indemnity for any liability he may incur as surety for the other, and afterwards the other partner mortgages his interest in the partnership property to a third person, without notice of this stipulation, the mortgage will be postponed in favor of the lien created by the stipulation, the mortgagee being charged with notice of the latter. WOODS, J., dissents.

From the Morgan Circuit Court.

*W. S. Shirley, J. V. Mitchell, T. A. Hendricks, C. Baker, O. B. Hord* and *A. W. Hendricks,* for appellants.

*J. H. Jordan, W. R. Harrison* and *W. E. McCord,* for appellees.

NIBLACK, J.—The complaint in this case was by James A. Lewis, Perry F. Douglass and Calvin F. Sims, against Henry Sims and Felix A. Rinehart, upon two chattel mortgages, executed by Rinehart to the plaintiffs upon his interest in certain partnership property, owned and held by the said Rinehart and Henry Sims, as partners in the business of farming, to secure the plaintiffs as the endorsers and sureties upon a bill of exchange held by Samuel M. Mitchell, on which Rinehart was principal, alleging that the plaintiffs had been compelled to pay the bill of exchange; that Rinehart had no other

property than that so mortgaged by him, and praying a settlement of the partnership business, and a foreclosure of the mortgages on Rinehart's separate interest in the partnership property.

Rinehart made default. The defendant Sims answered in general denial, and by way of cross complaint claimed a lien upon Rinehart's interest in the partnership property to secure him in money loaned to Rinehart on partnership account, and the individual account of the said Rinehart; also to secure him as surety on a bill in bank, the private debt of Rinehart, which lien the said, defendant Sims averred was reserved to him by the articles of partnership between him and Rinehart.

The defendant Sims, after filing his answer and cross complaint, died, and William R. Harrison, having been appointed administrator of his estate, was substituted as defendant in his stead.

Issue being joined, the cause was submitted to the court for trial, and, at the request of the plaintiff, the court made a special finding of the facts, which may be summarized as follows:

That on the 1st day of February, 1864, Henry Sims and Felix A. Rinehart entered into partnership in the business of farming, for the period of one year, for the purpose of having farmed, for their joint benefit, a certain farm belonging to the said Henry Sims, known as the Jackson farm, and situate near Martinsville, Indiana, the said Sims to furnish the farm, and the said Rinehart the labor, and the proceeds to be divided equally, in accordance with written articles of partnership mutually signed by the parties; that on the same day Rinehart executed to the said Henry Sims a mortgage on his interest in certain personal property then on the Jackson farm and belonging to him and the said Sims as partners, as above stated, to secure the payment of a note of even date and payable one year after date, for $265.26, which mortgage was duly recorded on the next day after its execution; that said mortgage has since been fully satisfied and discharged; that,

during the progress of the partnership, entered into as above, to wit, some time in the year 1866, Rinehart became indebted to the First National Bank of Martinsville, upon his private account, and made a note to such bank for such indebtedness, with the defendant Sims as his surety; that all the stock, implements. and other personal property used in carrying on their partnership business, were owned and held by the defendants Sims and Rinehart equally; that they also owned and held all the stock raised on, and the products of, the farm equally; that their partnership business was continued and carried on under their articles of partnership, herein above referred to, until the 16th day of August, 1871, when a new agreement in writing, concerning such partnership, covering the period of one year, was mutually executed by them, by which the partnership was extended to, and made to embrace, another farm, known as the Holbrook farm; that, by this new agreement, the defendant Sims was described as the party of the first part, and the said Rinehart as the party of the second part, it being stipulated therein that Rinehart was to do all the work, and to make all necessary repairs, on both farms, such repairs to be made under the direction, and with the consent, of the said Sims, and to extend to the farming implements and everything else used by the firm, and that Rinehart was not to cut any timber, nor to sell or otherwise dispose of any stock, grain or other property, on either of said farms, without the sanction of the said Sims; that this new agreement concluded as follows: "The party of the first part to hold and have a lien on all property now belonging to said firm, until the operation of the year is settled up between the said Sims and Rinehart, consisting of stock, corn, implements and everything else on said farm, to secure the said Sims for money advanced and endorsing bank notes, etc., or any other liability;" that afterwards it was mutually agreed that this new contract of partnership should run for an indefinite period of time; that the increased assets of the firm, under the new contract of

partnership, were owned and held as before, by both partners equally; that the bank debt of Rinehart, referred to as above, had been renewed from time to time, by Rinehart, with Sims as his surety, and remained then unpaid; that said firm carried on its farming operations under said last named articles of partnership, until the death of Sims, which took place on the 11th day of October, 1877; that said new articles of partnership were neither acknowledged nor recorded, as is provided by law for the acknowledgment and recording of mortgages, or other conveyances, nor in any other manner whatever; that since the death of Sims, to wit, in May, 1878, the said Harrison, as his administrator, was compelled to pay, and did pay, the bank debt of Rinehart, for which said Sims was surety, as above set forth, the bank having taken judgment against Sims as such surety; that, in the execution of said new articles of partnership, it was the intention of both Rinehart and Sims that such articles should create a lien in favor of Sims on all the partnership property, to secure him in his suretyship for Rinehart on said bank debt, and that it was understood that such a lien had been created, up to and until the commencement of this action; that Rinehart has never repaid to the estate of Sims the amount of money, or any part thereof, paid by Harrison, as the administrator of such estate, in discharge of the bank debt of the said Rinehart, and that there was then due to said estate for money so paid by the said Harrison, the sum of $1,367.50; that, in carrying on the partnership business, Rinehart was compelled to employ persons to assist him in doing the work on the farms, which he had obligated himself to perform; that he paid these persons in part by orders on merchants for goods, which were given and accepted upon his individual credit; that he also borrowed money with which he hired laborers to assist him on the farms; that in this way he became indebted to Samuel M. Mitchell in the sum of $730, about $300 of which was for goods so furnished on orders, and the rest for money borrowed; that, on the 21st day of January, 1876, Rinehart gave his in-

dividual note to the said Mitchell for the sum in which he had so become indebted, with the plaintiffs as his sureties; that afterwards, to wit, on the 20th day of April, 1877, the said Rinehart gave the plaintiffs the first mortgage sued on, and on the 17th day of May, 1877, he executed the second mortgage in suit, to secure the plaintiffs on account of their liability as sureties on said note to Mitchell; that the plaintiffs, at the time they took said mortgages, had no notice or knowledge of the existence of the new or last named articles of partnership entered into between Sims and Rinehart, as hereinabove described; that, when Rinehart executed these mortgages, he represented to the plaintiffs that there were no prior liens on the property included within them; that both of these mortgages to the plaintiffs were recorded within ten days after they were respectively executed; that, as such sureties for the said Rinehart, the plaintiffs have been compelled to pay, and have paid, said note to the said Mitchell; that Rinehart has in no manner repaid to the plaintiffs the amount paid by them for him to the said Mitchell, or any part thereof, and that there was then due to the plaintiffs from Rinehart, on account of their payment of said note to Mitchell, the sum of $851.19; that, at the time of the execution of the mortgages to the plaintiffs, and at the time of the trial, the condition of the partnership business was as follows:

Its total assets were of the value of two thousand, eight hundred and fifty-three dollars, and the value of the particular property named in the mortgages was two thousand six hundred dollars; that the firm of Sims & Rinehart owed no debts save such as it owed to its own members, Sims and Rinehart, respectively; that during the transaction of their partnership business the said Sims & Rinehart had, from time to time, reckonings of their mutual accounts so far as to adjust their several advancements to, and charges against, the firm, and against each other; that on the 6th day of January, 1876, they had such a reckoning, and Sims was found to be in-

debted to Rinehart upon partnership transactions, which had not been previously adjusted in the sum of $287.98, for which sum Sims executed his due-bill of that date to Rinehart, which amount it was agreed should be credited on notes held by Sims on Rinehart; that Sims acted as treasurer and cashier of the firm, and received all the money for property sold, and when Rinehart wanted money he drew it from Sims; that Sims would sometimes charge his advances to Rinehart on the partnership books, and at other times these charges on the books would be settled by notes from Rinehart to Sims; that in this way Sims held notes on Rinehart at the time this action was commenced as follows:

One for $350, dated June 14th, 1873, and due one day after date.

Another for $100, dated August 2d, 1873, and also due one day after date.

Another for $78, dated August 22d, 1873, and also due one day after date.

Another for $40, dated November 18th, 1873, and also due one day after date.

Another for $22.13, dated December 13th, 1873, and also due one day after date.

Another for $160, dated December 24th, 1873, and also due one day after date. That these were the notes referred to in the due-bill executed by Sims to Rinehart on the 6th day of January, 1876; that the money received by Rinehart on these notes, with the exception of $140, was expended by him in carrying on the business of the firm; that after crediting the amount of the due-bill on these notes, there yet remained due to Sims on such notes the sum of $343; that in adjusting the partnership accounts the said sum of $343 should be treated as having been advanced by Sims out of his private means; that Rinehart was insolvent, and aside from his interest in the firm had no property subject to execution; that by mutual agreement the stock, grain and the other property of the firm of Sims & Rinehart have been sold and con-

verted into money, subject to the rights of the several parties hereto in such stock, grain and other partnership property, which money, by further agreement, has been placed in the hands of the defendant Harrison, as administrator of the estate of Henry Sims, subject to the order of court in this cause; that the sum of $2,853 was realized from the sale of the entire partnership property, and that the specific articles enumerated in the plaintiff's mortgages sold for the aggregate sum of $2,600.

As conclusions of law from the foregoing facts, the court found:

1st. That of the said sum of $2,853, one-half, to wit, the sum of $1,426.50 should be paid to the estate of Henry Sims.

2d. That the sum of $343, the balance due to Sims on notes held against Rinehart, ought to be paid to the estate of the said Henry Sims out of the remaining half of said sum of $2,853.

3d. That the remainder of said last named sum, to wit, the sum of $1,083.50, ought to be retained by the defendant Harrison, as administrator of the said Henry Sims' estate, and credited upon the amount paid by him, as such administrator, on the bank indebtedness of Rinehart, for which the said Sims was surety.

To these conclusions of law the plaintiffs excepted, but the court, disregarding their exceptions, rendered judgment in accordance with the conclusions at which it had thus arrived.

The principal, and indeed the controlling, question in this case is, did the plaintiffs below, who are the appellants here, by their mortgages in suit, acquire a priority of lien upon the mortgaged property over that claimed by Henry Sims under the concluding clause of the new articles of partnership set out as above in the special finding?

Collyer on Partnership, vol. 1, p. 186, in treating of the separate interests of the several partners in a firm, and quoting from Lord Hardwicke, says that, " When an account is to be

taken, each is entitled to be allowed against the other every-thing he has advanced or brought in as a partnership trans-action, and to charge the other in the account with what the other has not brought in, or has taken out more than he ought; and *nothing is to be considered his share, but the pro-portion of the residue on the balance of the account.*" This proportion of the residue to which each party is entitled upon final settlement is obviously what remains to him after all his obligations to the firm, and to the other members thereof respectively, arising out of the contract or articles of partnership, have been fully discharged.

Each partner has a specific lien on the partnership stock for moneys advanced by him more than his share, for the use of the copartnership, and the lien of each partner exists not only as against the other partners, but also against all per-sons claiming through them or any of them. Lindley on Partnership, 681.

The note to the First National Bank of Martinsville, upon which Henry Sims was surety for Rinehart, being the private and individual debt of Rinehart, the estate of Sims would have had no lien against the interest of Rinehart in the firm, in the absence of some express agreement conferring such a lien; but we know of nothing against the competency of Rine-hart to stipulate as a part of the contract of partnership for the creation of such a lien in favor of his copartner, to guard against any loss or defalcation which might, incidentally or otherwise, injure the business of the firm, or might injuriously affect Sims as a member of the firm.

Sims and Rinehart having been in the joint possession of the partnership property in the prosecution of their business as partners, their individual creditors were required to take notice of their respective rights and interests in such partner-ship property, and of the prior claim which any other person, interested in the business of the partnership, might have had against such property.

No record of the articles of partnership was necessary to

charge individual creditors with notice of such rights and interests, and such prior claims.

The circumstances under which the appellants took their mortgages necessarily put them upon inquiry as to the terms by which Rinehart held an interest in the mortgaged property, and charged them with notice of any prior claim which Sims, as the partner of Rinehart, may have had upon it.

We are, therefore, of the opinion that the lien of the estate of Sims upon the partnership property had precedence of the liens conferred by the mortgages, and that the court below did not err in the conclusions of law at which it arrived. *Donellan* v. *Hardy*, 57 Ind. 393; *Over* v. *Hetherington*, 66 Ind. 365.

The judgment is affirmed, with costs.

## ON PETITION FOR A REHEARING.

NIBLACK, J.—A petition for a rehearing has been filed in this case, upon which elaborate arguments on both sides have been submitted.

We have given all that has been said in support of, as well as against, the petition a very careful consideration, and are unable to reach a conclusion different from that announced in the original opinion. Much of the argument of the appellants is based upon the theory that the stipulation for the indemnity of Sims for advancements to and on account of liabilities incurred for Rinehart, contained in the agreement of partnership, was inoperative as against them, because the agreement containing the stipulation was not recorded, and because it was not shown that they had actual notice of the existence of such a stipulation at the time they took their chattel mortgages, thus assuming that so much of the agreement as related to such indemnity was analogous to and stood upon the same footing with a chattel mortgage.

In that respect the appellants are in error, as it was not necessary that the contract or agreement of partnership should

be even in writing, much less that it should have been recorded. Collyer on Partnership, section 3; *Holmes* v. *McCray*, 51 Ind. 358.

The general rule is, that the purchaser or assignee of personal property acquires no better or greater title to it than the vendor or assignor had in it, and that no writing is necessary for the sale or assignment of that class of property. It is only when the statute of frauds intervenes that a writing, or the record of a writing, becomes necessary. That statute provides that no assignment of personal property by way of mortgage shall be valid as against third persons, where possession of the property is not delivered to the mortgagee, unless in writing, and duly acknowledged and recorded, but neither that nor any other statute contains any similar provision as applicable to articles of partnership. 1 R. S. 1876, p. 505, section 10. Persons, therefore, acquiring, or attempting to acquire, an interest in personal property held in partnership, must take notice of the tenure by which such property is held, and must necessarily incur all the risks incident to the acquisition of that class of property from whomsoever obtained.

The facts found by the court show that, at the time the appellants obtained their mortgages on the property in controversy, the property was held by and in the actual possession of the firm of Sims & Rinehart, under an agreement with Rinehart that none of it should be sold, or otherwise disposed of, without the consent of Sims, and that Sims was to continue to hold and have a lien upon all of said property, to secure him against advances made to, and liabilities incurred on account of, Rinehart, presumably to enable Rinehart to better perform the obligations he had assumed as a member of the firm. That agreement not only continued Sims in the possession of the property, but greatly increased his authority and personal control over it, thus taking the security it afforded out of the provisions of section 10 of the statute of frauds, *supra.*

In the light of these facts, it has not been, and we think

can not reasonably be, contended that if Rinehart had not attempted to mortgage his supposed interest in the partnership property, he would have had any just claim to any of the proceeds of such property as against the estate of Sims. If, in such an event, Rinehart would have had no claim to any portion of the proceeds of the partnership property, we are utterly unable to recall any principle governing the transaction of partnership business, which would enable the appellants to assert a greater claim than Rinehart could have done.

Other questions are discussed, but regarding them as merely incidental, and entirely subordinate to those upon which we have expressed an opinion as above, we deem it unnecessary to extend this opinion by specifically ruling upon them.

The petition for a rehearing is overruled.

### DISSENTING OPINION.

WOODS, J.—I am not able to concur in the decision made, and think a rehearing should be granted.

Passing by the questions, argued with great force by counsel for the appellant, whether the clause in the articles of copartnership, relied upon as creating the alleged lien in favor of Sims, created any lien at all, and, if so, whether it extended to any property acquired after the making of the articles, I am clear that the lien was not such as third parties were bound to take notice of. The quotations from Collyer and Hardwicke and from Lindley are doubtless accurate statements of the law, but when it is said that "Each partner has a special lien on the partnership stock for moneys advanced by him more than his share, for the use of the co-partnership, and the lien of each partner exists not only as against the other partners, but also against all other persons claiming through them or under them—Lindley on Partnership, 681," reference is had to the lien which grows out of the relation of partners to each other, and which is given by law irrespective of any express provision therefor in the articles of copartnership. Of such lien the world is bound to take notice. Knowledge

of the existence of the partnership imports and is knowledge of the partnership lien, when the word is used in its proper sense.

But when it is undertaken, by special agreement incorporated in the articles of copartnership, to stipulate for a lien in favor of one of the copartners, which would not arise by implication of law from the fact and nature of the partnership, without a stipulation therefor, it seems clear to me that the law ought to be, and is, that such lien should not affect the rights of a *bona fide* third purchaser for value. Unless he has notice to the contrary, he has the right to presume that each partner's interest, or tenure, if that is the preferable word, is subject to no liens except for the discharge of partnership liabilities, and that when these have been discharged, his share of the net surplus is his own, as absolutely as any other form of property, and subject to the imposition of incumbrances in the same way, and only in the same way. That a partner may mortgage his interest before its ascertainment, and while the partnership continues, can not be doubted. The prevailing opinion concedes as much.

Now the doctrine is familiar and elementary, that the power of a partner to deal with the partnership property, and to bind the firm by contracts made in the partnership name, can not be limited by restrictions in the copartnership articles, unless the restriction is known to the party with whom he deals; and still stronger is the reason for saying that the power of the partner to deal with his own interest in the partnership property—his share of the net surplus which shall remain after the payment of partnership liabilities—can not be restricted by a stipulation in the articles for a lien which is not a partner's lien, but is for the securing of obligations, which, in a legal sense, are separate from, and independent of, the partnership transactions, and for which, as is conceded in the prevailing opinion, there would be no lien "in the absence of some express agreement."

The following is the language of Mr. Lindley, p. 325:

"By law every member of an ordinary partnership is the agent of the firm, so far as is necessary for the transaction of its business in the ordinary way, and to this extent his authority to act for the firm may be assumed by those who know nothing of the real limits of his authority. If his copartners have restricted his authority to narrower limits (which they are perfectly at liberty to do), still they will be bound to all persons dealing with him *bona fide* without notice of the restriction, so long as he acts within the wider limits set by law as above explained."

Again, at page 326, the author says:

"Restrictions placed by the partners upon the powers which each shall exercise do not affect non-partners, who act *bona fide* and without notice of the restriction."

And again, at page 682, the following:

"The lien of partners on the partnership property extends, as has been stated, to whatever is due to or from the firm, by or to the members thereof, *as such*. It does not, however, extend to debts incurred between the firm and its members, otherwise than in their character of members. It has therefore been held that if a partner borrowed money of the firm for some private purpose of his own, and then became bankrupt, his assignees were entitled to his share in the partnership, ascertained without taking into account the sum due from him to the firm in respect to this loan; and that the solvent partners were driven to prove against his estate in order to obtain payment of the money lent."

These doctrines are elementary, and of course may be found in the books of all the text-writers on the subject.

All I desire to add is expressed in the following extracts, taken from the appellants' brief:

"Now, if third persons are not bound to take notice of restrictions on the powers of partners which may be inserted in articles of copartnership, how can they be required to take

Lewis *et al. v.* Harrison *et al.*

notice of a contract lien for a private debt disconnected from the partnership, which one of the parties may give to the other by a clause in the articles of copartnership? In case of the supposed restriction, the restriction has relation to the partnership business, and is properly made a part of the articles of copartnership, but still is not binding on third persons, in the absence of actual notice. In case of the supposed lien by one partner on his interest in the firm to secure to another partner a private debt, the matter has no connection with the partnership, and yet it is held that because it is in the articles of copartnership the world must take notice of it. Surely this is not the law, and ought not to stand as the decision of this court.

" The lien which one partner has on the property and effects of the firm for money advanced to the firm, or to a member thereof, to carry on the business of the firm is not the creature of any stipulation in the articles of copartnership, but it is the creature of the law and is incident to the partnership relation. It exists equally where no articles of copartnership are entered into as where they are. Now if one partner may have a lien as against third persons on the interest of another partner in the partnership property by so providing in the articles of copartnership, why may not such a lien be reserved in a parol contract of partnership? There is no law requiring a contract of partnership to be in writing, and this court has ruled that a contract of partnership may be formed without writing, even where the object of the partnership is to buy and sell real estate. *Holmes* v. *McCray*, 51 Ind. 358.

" If partners, in forming their copartnerships, may verbally reserve liens on the interest of one of the partners in the partnership property, of which liens third persons are bound to take notice, the statute law of the State providing for the making and recording of mortgages of personal property would seem to have been repealed without legislative intervention.

" We submit that the true rule on this subject is that possession of partnership property by a firm is notice to everybody of the *partnership rights* of each partner of the firm in the property so possessed, but that it is no notice of any contract right which one partner may have acquired in the contingent residue of another partner after the partnership shall have been wound up and the partnership debts shall have been paid."